BOGACKI v. GREAT-WEST LIFE ASSURANCE CO.

1. STATUTES—CONSTRUCTION—INSURANCE—INCONTESTABLE CLAUSE. Comp. Laws Supp. 1922, § 9100(147), providing that life insurance policy shall be incontestable after two years from its date, with certain exceptions, condones no fraud, but merely operates in nature of statute of limitations.

Defense of want of insurable interest as affected by incontestable clause in policy, see annotation in 42 L. R. A. 247; 5 L. R. A. (N. S.) 747.

Effect of incontestable clause on provision in life or accident policy in relation to military service, see annotation in 15 A. L. R. 1283.

2. LIMITATION OF ACTIONS—FRAUD.

Law tolerates no fraud, yet frequently permits time to operate as bar to its assertion.

3. STATUTES—CONSTRUCTION—EXCEPTIONS.

Construction of statute providing that life insurance policy shall be incontestable after two years from its date, with certain exceptions, falls within rule that inclusion of exception excludes everything else.

4. INSURANCE—LIFE INSURANCE—DEFENSE OF PUBLIC POLICY NOT AVAILABLE AFTER DESIGNATED PERIOD.

Claim by insurer that life insurance policy is against public policy and therefore void is contest required by Comp. Laws Supp. 1922, § 9100(147) to be made within designated period, and may not be urged thereafter.

5. SAME—CONTEST LIMITED TO EXCEPTIONS STATED IN STATUTE.

After lapse of two years, contest of life insurance policy is limited to exceptions stated in statute (Comp. Laws Supp. 1922, § 9100 [147]).

Appeal from Wayne; O'Brien (Ernest A.), J. Submitted October 21, 1930. (Docket No. 116, Calendar No. 34,808.) Decided January 23, 1931.

Bill by Gertrude Bogacki, administratrix of the estate of Stanley Bogacki, deceased, against the Great-West Life Assurance Company, a Canadian corporation, and Charles Elson, to obtain insurance under a policy issued by defendant company. Crossbill by defendant company denying liability and by defendant Elson to obtain the insurance. Decree dismissing plaintiff's bill and defendant Elson's cross-bill. Defendant Elson appeals. Reversed, and relief granted to defendant Elson.

*Joseph B. Beckenstein* (*Wm. Henry Gallagher* and *John Sklar,* of counsel), for appellant.

*Walters, Carmichael & Head,* for appellee Great-West Life Assurance Company.

Wiest, J.  The Great-West Life Assurance Company, on December 14, 1922, upon his application, issued to Stanley Bogacki a life insurance policy for $15,000, with Charles Elson "copartner," beneficiary.  The policy contained the following provision:

"Incontestability.  This policy shall be incontestable after one year from date of issue except for nonpayment of premium."

The statute in force at that time provided:

"No policy of life insurance shall be issued in this State, unless the same shall contain the following provisions: * * *

"Third.  A provision that the policy shall constitute the entire contract between the parties and shall be incontestable after two years from its date, except for nonpayment of premium and except for violations of the conditions of the policy relating to naval and military services in time of war."  Comp. Laws Supp. 1922 § 9100 (147).

Bogacki died February 26, 1925.  Premiums were paid by Elson to the time of the death of Bogacki. Plaintiff, as administratrix of the estate of Bogacki, filed the bill herein to obtain the insurance, making Elson, the beneficiary, and the insurance company defendants.  Elson, by cross-bill, sought decree in accordance with the provisions of the policy, and set up the incontestability provision.  The insurance company, by cross-bill, asserted that the policy was void because Bogacki was under guardianship as a spendthrift and could not make a lawful contract of partnership or of life insurance in 1922; averred that no partnership relation existed between Elson and Bogacki at any time; that Elson was the moving party and payer of the premiums on the policy, and

that Elson did not have an insurable interest in the life of Bogacki.

The insurance company contends that:

"The incontestable clause does not bar the appellee assurance company from the benefit of the defense that the policy was not a contract of insurance but was a gambling or wagering contract, contrary to public policy, and not affected by the statute."

In the circuit court the bill of plaintiff and the cross-bill of Elson were dismissed, and, under the cross-bill of the insurance company, the policy was adjudged void and the premiums paid awarded the insurance company as damages. Elson appealed.

At the threshold of the case we must decide whether the insurance company, under the statute and the incontestability clause in the policy, can urge the invalidity of the contract after the expiration of the statutory period.

Counsel for the insurance company tacitly admit that the only defense is that the contract of insurance was a gamble or wager and a violation of public policy, and, therefore, is not barred by the statute. It is urged that the statute must be strictly construed and as not taking away such a defense.

The statute condones no fraud; it merely operates in the nature of a statute of limitations. The law tolerates no fraud, yet frequently permits time to operate as a bar to its assertion. The shade between actual fraud and a violation of public policy in life insurance contract relations is not so pronounced as to justify application of the statute to the one and not to the other. The statute carries the only permissible exceptions to its bar and its construction falls within the rule that the inclusion of

an exception excludes everything else. The term "incontestable" covers all grounds of contest not specifically excepted. The invocation of public policy by the insurance company, in order to have relief from its contract of insurance, is a contest the statute requires to be made within a designated period and not to be urged thereafter. Insurance contracts have radically departed from common-law conception of public policy. If the contract conflicts with modern morals or contravenes the established interests of society, then it violated public policy. The same may be said, however, of actual fraud. The application and the policy disclosed no violation of public policy. The contest is upon extrinsic facts.

We think the true rule is found in *Wright* v. *Mutual Benefit Life Ass'n of America*, 118 N. Y. 237, 241 (23 N. E. 186, 6 L. R. A. 731, 16 Am. St. Rep. 749), in that case:

"The defendant also offered to show that the beneficiary, Houghton, had no insurable interest in the life of the insured, in short, that it was a speculative and fraudulent scheme, devised and practiced by Houghton, to secure an advantage to himself upon the life of Wright which must soon terminate from the diseases he was then afflicted with."

The court stated, in sustaining the exclusion of such offer, the following (p. 242):

"It is to be presumed that the defendant had some purpose when it offered to the insured a contract containing the stipulation and that the stipulation itself had some meaning. * * * It is not a stipulation absolute to waive all defenses and to condone fraud. On the contrary, it recognizes fraud and all other defenses but it provides ample time and opportunity within which they may be, but beyond which they

may not be, established. It is in the nature of and serves a similar purpose as statutes of limitations and repose, the wisdom of which is apparent to all reasonable minds. It is exemplified in the statute giving a certain period after the discovery of a fraud in which to apply for redress on account of it and in the law requiring prompt application after its discovery, if one would be relieved from a contract infected with fraud. The parties to a contract may provide for a shorter limitation thereon than that fixed by law and such an agreement is in accord with the policy of statutes of that character. * * *

"While fraud is obnoxious and should justly vitiate all contracts, the courts should exercise care that fraud and imposition should not be successful in annulling an agreement, to the effect that if cause be not found and charged within a reasonable and specific time, establishing the invalidity of the contract of insurance, it should thereafter be treated as valid."

See, also, 5 Cooley's Briefs on Insurance (2d Ed.), p. 4501.

In *Harrison* v. *Provident Relief Ass'n*, 141 Va. 659, 674 (126 S. E. 696, 40 A. L. R. 616), it was stated:

"And, finally, it is said that to permit a recovery in this case would be against public policy. If this were ever true, it is not now; our statute, section 4228 of the code, in sympathy with the current of general law, declares that such contests shall no longer be tolerated after a reasonable time for full investigation has passed without protest.

"This and kindred laws are wise statutes of limitation. Insurance companies should not be permitted with shut eyes to receive in silence the profits of their contracts and to grow articulate only when called upon to pay."

In *Midland National Bank* v. *Dakota Life Ins. Co.*, 277 U. S. 346 (48 Sup. Ct. 532), the court did no more than to state:

"Whether if such evidence had been offered, it should have been excluded because of the provisions of the North Dakota statutes making policies incontestable after two years, or for other reasons, compare *Finnie* v. *Walker* (C. C. A.), 257 Fed. 698 (5 A. L. R. 831), we have no occasion to consider."

In *Powell* v. *Mutual Life Ins. Co.*, 313 Ill. 161 (144 N. E. 825, 36 A. L. R. 1239), the question we are now considering was not involved, but the court did let fall the following remark:

"This clause amounts to an agreement between the insurer and the insured that after the expiration of such period the company shall be estopped from contesting the policy or setting up any defense, except such as may be reserved therein or such as is allowed on the ground of public policy."

Our statute no longer leaves it to an agreement of the parties, but specifically requires that it be in the policy. Public policy, at the best, is somewhat nebulous; is subject to legislative regulation, and, whatever may be said in opinions about the right to contest on the ground of public policy where the incontestability clause was merely by agreement, has no applicability in case the legislature has made such a provision a part of the contract. We, therefore, get no help from *Clement* v. *New York Life Ins. Co.*, 101 Tenn. 22 (46 S. W. 561, 42 L. R. A. 247, 70 Am. St. Rep. 650); *Bromley's Adm'r* v. *Washington Life Ins. Co.*, 122 Ky. 402 (92 S. W. 17, 5 L. R. A. [N. S.] 747, 121 Am. St. Rep. 467, 12 Ann. Cas. 685).

In *Anotil* v. *Manufacturers' Life Ins. Co.*, 24 App. Cases (1899), 604, the privy council, in reviewing

the decision of the supreme court of Canada (28 Can. S. C. 103), stated that the parties could not by agreement defeat the general principles of public policy.

The incontestability statute of this State expresses public policy on the subject, and, after the lapse of two years, contest is limited to the exceptions stated in the statute.

The decree in the circuit is reversed, and a decree will be entered here dismissing the plaintiff's bill and the cross-bill of defendant insurance company, and granting the relief prayed in the cross-bill of defendant Elson. Defendant Elson will recover costs against the Great-West Life Assurance Company.

·· BUTZEL, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.