NEW YORK LIFE INSURANCE COMPANY *v.* PIETRO BONASSO, *et al.*

(CC 600)

Submitted February 7, 1939. Decided March 21, 1939.

144

*M. M. Neely* and *Alfred Neely,* for plaintiff.
*J. C. McManaway,* for defendants.

Fox, President:

This case comes to this court on certification from the circuit court of Harrison County, and involves the correctness of a ruling of that court by which the demurrer of the defendants to the amended bill of the plaintiff was overruled.

On June 7, 1928, Pietro Bonasso made a written application to the New York Life Insurance Company for a policy of insurance in the sum of $10,000.00, and in said application, in answer to certain questions, made certain statements which the amended bill alleges were false, and by him known at that time to be false. On this application a policy of insurance on the life of the said Bonasso was issued, payable to Kate Bonasso, his wife, in the sum of $10,000.00, with a double indemnity provision should the death of the insured result from accident, as defined in the policy, and the further provision

that upon a showing of presumably permanent disability, before the age of sixty years, there should be paid to the insured the sum of $100.00 per month, and payment of premiums on the policy waived. This policy was counter-signed at Wheeling, West Virginia, on June 29, 1928, by F. E. Ambruster, agency director.

The policy contains this further provision:

"This policy shall be incontestable after two years from its date of issue except for non-payment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits."

The controversy before us is based upon the interpretation and application of this clause and its relation to the policy as a whole.

Accepting the allegations of the amended bill as true, and this upon demurrer we must do, it appears that the application above mentioned, which was made a part of the policy issued thereon, contained the following questions and answers:

"7A. Have you had any accident or injury or undergone any surgical operation?" "No".
" B. Have you been under observation or treatment in any hospital, asylum or sanitar-ium?" "No".
"8C. Have you consulted a physician for or suf-fered from any ailment or disease of the stomach or intestines, liver, kidneys or bladder?" "No".
"11. What physician or physicians, if any, not named above, have you consulted, or been examined or treated by within the past five years?" "Not treated".

It will be apparent that these questions and answers were material and important, and bore not only on the provision of the policy as to payment thereunder on the death of the insured, from natural causes, but payments provided therein to be made in case of disability. The

amended bill avers that the answers to these questions were falsely and fraudulently made, and seeks to cancel the disability and double indemnity features of the policy.

The joint demurrer of Pietro Bonasso and Kate Bonasso is based on the fact appearing on the face of the amended bill that this suit was instituted after two years from the date of the issue of the policy, and raises the clear-cut question of whether or not the exceptions in the incontestability clause apply to all provisions and conditions of the policy relating to disability and double indemnity benefits, or only those affecting the collection of benefits after the expiration of two years.

The question has not been heretofore presented to this court, and we are therefore forced to rely on authority from other jurisdictions. While we are of the opinion that the policy under consideration, having been countersigned and delivered in this state, should be interpreted under the laws of this state, (Code, 38-2-24; *Equitable Life Assur. Soc.* v. *Pettus,* 140 U. S. 226, 11 S. Ct. 822, 35 L. Ed. 497; *U. S. Mortgage & Trust Co.* v. *Ruggles,* 258 N. Y. 32, 179 N. E. 250, 79 A. L. R. 802; *Mutual Life Ins. Co.* v. *Johnson,* 293 U. S. 335, 55 S. Ct. 154, 79 L. Ed. 398; *Equitable Life Assur. Soc.* v. *Deem,* 91 Fed. (2d) 569; *New York Life Ins. Co.* v. *Ruhlin,* 25 Fed. Supp. 65; 2 Cooley's Briefs on Insurance 1042), this, in view of the lack of announced law on the subject in this state, is not of controlling importance.

The defendants, to support their demurrer, strongly rely on *Ness* v. *Mutual Life Ins. Co.,* 70 Fed. (2d) 59. In this case the clause of the policy under consideration was:

"Incontestability—Except for non-payment of premiums and except for the restrictions and provisions applying to the Double Indemnity and Disability Benefits as provided in Sections 1 and 3 respectively, this Policy shall be incontestable after one year from its date of issue unless the insured dies in such year, in which event it shall be incontestable after two years from its date of issue."

And it was held that the incontestability clause was applicable to the double indemnity and disability provisions. The ruling in this case was followed in *Mutual Life Ins. Co. v. Markowitz,* 78 Fed. (2d) 396; *New York Life Ins. Co. v. Kaufman,* 78 Fed. (2d) 398; *New York Life Ins. Co. v. Yerys,* 80 Fed. (2d) 264; *Horwitz v. New York Life Ins. Co.,* 80 Fed. (2d) 295; *New York Life Ins. Co. v. Truesdale,* 79 Fed. (2d) 481; *Kiriakides v. Equitable Life Assur. Soc.,* 174 S. C. 140, 177 S. E. 40; *Mutual Life Ins. Co. v. Margolis,* 11 Cal. App. (2d) 382, 53 Pac. (2d) 1017. The language of the clause considered in the *Ness* case is distinguishable from that used in the clause before us, being "except for the restrictions and provisions applying to the Double Indemnity and Disability Benefits as provided *in Sections 1 and 3 respectively"* (italics ours), thus defining as well as limiting the scope of the exceptions, and this distinction might, considering this case alone, explain the apparent conflict between that case and those to be hereafter considered. But we find that while some of the cases which follow the ruling in the *Ness* case are based on the clause considered in that case, in other cases provisions substantially the same and in some instances identical with the clause in the case at bar, were considered and held to be governed by the *Ness* case. In *Stroehmann v. Mutual Life Ins. Co.,* 300 U. S. 435, 57 S. Ct. 607, 81 L. Ed. 732, on a clause identical with that in the *Ness* case, the rule announced in that case was followed. In the *Stroehmann* case, as well as other cases supporting the theory of the demurrants, the ambiguity of the clause considered is stressed, and the rule that policies containing ambiguities will be construed in favor of the insured is invoked. There is, of course, no question that such rule is supported by the decisions of this court, however much we might be inclined to waive its strict application in cases where it would tend to prevent the uncovering of fraud.

Another line of cases supports a rule directly opposite to that of the *Ness* case. In *Greber v. Equitable Life Assur. Soc.,* 43 Ariz. 1, 28 Pac. (2d) 817, 821, involving a

clause which provided "This policy, except as to the provisions relating to Disability and Double Indemnity, shall be (2) incontestable after it has been in force during the lifetime of the Insured for a period of one year from its date of issue provided premiums have been duly paid", it was held that the policy was contestable as to disability and double indemnity provisions, after the expiration of one year. Judge Parker, in the *Ness* case, says the language considered in the *Greber* case is "very different from that here involved." In *New York Life Ins. Co. v. Davis*, 5 Fed. Supp. 316, on a clause identical with that here involved, it was held that, under the exception made, the disability and double indemnity provisions could be cancelled for false representations in a suit brought after the expiration of the contestable period mentioned. In *Pyramid Life Ins. Co. v. Selkirk*, 80 Fed. (2d) 553, the clause considered is substantially the same as that before us and was held to preserve to the insurer the right of contest as to disability and double indemnity benefits, and the clause was distinguished from that involved in the *Ness* case. In *Connecticut General Life Ins. Co. v. McClellan*, 94 Fed. (2d) 445, where the exception was "provisions and conditions relating to benefits in the event of total and permanent disability", it was held that the incontestability clause did not bar suit to cancel provisions as to disability, and the exception was distinguished from that considered in the *Ness* case. In *Smith v. Equitable Life Assur. Soc.*, 169 Tenn. 477, 89 S. W. (2d) 165, on substantially the same language, the same holding was made. In *Ruhlin v. New York Life Ins. Co.*, 93 Fed. (2d) 416, the identical clause before us was involved, and the right of contest as to disability and double indemnity was upheld. The holding was made on the theory that the court (C. C. A., 3rd District) was not bound to follow state decisions, and for that reason the case was, on the authority of *Erie Railroad Co. v. Tompkins*, 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, 114 A. L. R. 1487, reversed, 304 U. S. 202, 58 S. Ct. 860, 82 L. Ed. 1290. On remand to the District Court in October, 1938, the holding reported in 93 Fed. (2d) 416 was followed af-

ter consideration of the decisions of the states of New York, Ohio and Pennsylvania, wherein some of the transactions involved had been consummated. 25 Fed. Supp. 65. In *Equitable Life Assur. Soc. v. Deem,* 91 Fed. (2d) 569, 571, the Circuit Court of Appeals for the Fourth Circuit, Judges Parker, Northcott and Chesnut sitting, held, in an opinion by Judge Chesnut, that a clause reading, "This policy, *except as to the provisions relating to Disability and Double Indemnity,* shall be (a) *Incontestable* after it has been in force during the lifetime of the Insured for a period of one year from its date of issue, provided premiums have been duly paid * * *" (italics supplied), did not deprive the insurer of the right to interpose a defense of fraudulent representations in the application in a suit to recover disability benefits, instituted about seven years after the policy was issued. The word, "provisions", used in that case is given a broader meaning than the word "conditions", but it will be noted that in the case at bar the exception embraces "provisions and conditions," and it will hardly be contended that the word of narrow application will absorb or nullify the word having the broader application. In connection with this case it should also be observed that the *Ness* case was discussed and distinguished, and one of the points of difference was the language of the clauses involved in the two cases. The wording of the two clauses is termed "quite different", and Judge Parker, who wrote the opinion in the *Ness* case and who sat in this case, evidently agreed to the distinctions pointed out, both as to the language of the two clauses involved and the rulings thereon.

The opinion of the trial court and the briefs of counsel in this court apparently agree that the *Ness* case and the *Deem* case represent the different viewpoints from which the case at bar must be approached. We are disposed to follow the holdings of the *Deem* case. The *Ness* case, as we view it, rests upon a clause quite different from that before us, and a clause which may be said to be ambiguous and of such a nature as to give full play to the recognized rule that, in such circumstances, the insured will

be favored in the interpretation of a policy or any of its provisions. Ambiguity is the basis of a decision in the *Ness* case and the cases decided on the authority of that case. We think, too, that courts fell into error in applying the *Ness* case to provisions different from that considered therein, and out of these errors has grown confusion and apparent conflict of authority. On the other hand, we do not think the charge of ambiguity can be laid against the clause in the policy before us. The clause is broad and sweeping. The exception covers "provisions and conditions relating to Disability and Double Indemnity Benefits" without limitation. Conditions upon which disability and double indemnity benefits may be collected are defined, but there are other provisions in the policy relating to these benefits. They are referred to in the body of the policy to which other provisions and conditions are attached, and other general provisions apply. We quote with approval the language employed in the *Deem* case on this point.

"But whatever the reason for the now customary exception, 'No reason appears to doubt the power of the insurer to except from the ordinary Incontestability Clause *all policy provisions relating to* Disability Benefits. * * *' And in interpreting the excepting phrase, the only question is whether the wording used discloses a purpose definitely so to do. In our opinion it does. This is the effect of the words used in their plain meaning. There is no ambiguity or uncertainty in the phrase. The wording is naturally that which comes to mind to express the thought intended. It is, in abbreviated form, in the very words used in the statute, and as expressed in the Supreme Court opinion, supra. The exception, 'as to the provisions relating to Disability and Double Indemnity' is comprehensive in scope, applying to all such provisions in the policy. * * * And the exception directly relates to the 'Policy', that is it excepts the part of the policy which *grants* the disability benefits as an obligation of the company. The phrase does not grammatically modify the word 'incontestable' and

> thus merely affect the causes of contest, but relates to the whole subject matter of the policy insofar as it covers liability of the company for disability benefits. The policy as a whole includes three separate kinds of insurance, which constitute in reality three major promises of insurance protection, life, accident and disability. It seems entirely clear that the insurer intended to avail itself of the statutory authority to make the incontestable clause inapplicable to the latter two of these risks, and thus excepted from the clause those provisions of the policy relating to them."

It is contended that the use of the words "provisions and conditions relating to" were unnecessary to convey the meaning contended for by the plaintiff, and that their use shows an intent to confine the exception to "provisions and conditions" relating to the conditions under which benefits might be collected. It may be that the words used were unnecessary to give to the exception the meaning for which the plaintiff contends, but their elimination would not, in our opinion, necessarily have closed the door to the present contention of the defendants. If the words used were intended to apply to the whole policy, as we hold they do, then it is unimportant that they were unnecessarily used. Legal phraseology has never been noted for economy in the use of words, and many decisions of this and other courts, and this opinion, attest the fact that the use of too many words to express thought is a human failing.

The ruling of the circuit court is affirmed.

*Affirmed.*